UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL ACTION |
| | * | |
| VERSUS | * | NO. 3:14-CR-146-BAJ |
| | * | |
| BRIAN CAVALIER | * | AUGUST 24, 2016 |

* * * * * * * * * * * * * *

SENTENCING HEARING BEFORE
THE HONORABLE BRIAN A. JACKSON
UNITED STATES DISTRICT CHIEF JUDGE

APPEARANCES:

FOR THE GOVERNMENT:  UNITED STATES ATTORNEY'S OFFICE
                     BY:  ALAN A. STEVENS, ESQ.
                     777 FLORIDA STREET, SUITE 208
                     BATON ROUGE, LOUISIANA 70801

FOR THE DEFENDANT:   BOURLAND LAW FIRM
                     BY:  J. DAVID BOURLAND, ESQ.
                     10101 SIEGEN LANE, BUILDING 3, SUITE A
                     BATON ROUGE, LOUISIANA 70810

OFFICIAL COURT REPORTER:  SHANNON L. THOMPSON, CCR
                          UNITED STATES COURTHOUSE
                          777 FLORIDA STREET
                          BATON ROUGE, LOUISIANA 70801
                          (225) 389-3567

PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY USING
COMPUTER-AIDED TRANSCRIPTION SOFTWARE

```
 1          08-24-2016 - USA V. BRIAN CAVALIER - 3:14-CR-146-BAJ
 2                 REPORTER'S NOTE:  (BRIAN CAVALIER, DEFENDANT, WAS
 3   PRESENT IN COURT, REPRESENTED BY J. DAVID BOURLAND.  ALAN A.
 4   STEVENS, ASSISTANT UNITED STATES ATTORNEY, WAS PRESENT IN
 5   COURT.)
 6                 THE COURT:  GOOD AFTERNOON, EVERYONE.
 7          BE SEATED.
 8                 MR. BOURLAND:  GOOD AFTERNOON, JUDGE.
 9                 THE COURT:  OKAY.  LET'S CALL THE FIRST CASE.
10                 THE CLERK:  CRIMINAL NO. 14-146-BAJ, UNITED STATES
11   OF AMERICA VERSUS BRIAN CAVALIER.
12                 MR. STEVENS:  GOOD AFTERNOON, JUDGE.  ALAN STEVENS
13   ON BEHALF OF THE UNITED STATES.
14                 THE COURT:  MR. STEVENS.
15                 MR. BOURLAND:  GOOD AFTERNOON, YOUR HONOR.  DAVID
16   BOURLAND ON BEHALF OF MR. CAVALIER, WHO IS PRESENT WITH ME IN
17   COURT TODAY FOR SENTENCING.
18                 THE COURT:  GOOD MORNING, MR. BOURLAND.
19          AND GOOD MORNING TO YOU, MR. CAVALIER.
20                 THE DEFENDANT:  GOOD MORNING.
21                 THE COURT:  HOW ARE YOU, SIR?
22                 THE DEFENDANT:  ALL RIGHT.
23                 THE COURT:  HOW ARE YOU FEELING TODAY?
24                 THE DEFENDANT:  GOOD.
25                 THE COURT:  YOU ARE STILL TAKING YOUR MEDICATIONS?
```

| | |
|---|---|
| 1 | **THE DEFENDANT:** YES, SIR. |
| 2 | **THE COURT:** ALL RIGHT. YOU STILL FEELING PRETTY |
| 3 | GOOD WITH THINGS, HUH? |
| 4 | **THE DEFENDANT:** YES, SIR. |
| 5 | **THE COURT:** ALL RIGHT. NOW, THIS MATTER IS BEFORE |
| 6 | THE COURT FOR SENTENCING TODAY. IS THERE ANY REASON WHY |
| 7 | SENTENCE SHOULD NOT BE IMPOSED AT THIS TIME? |
| 8 | **MR. STEVENS:** NONE THAT I'M AWARE OF, JUDGE. |
| 9 | **MR. BOURLAND:** NONE FROM THE DEFENSE, YOUR HONOR. |
| 10 | **THE COURT:** OKAY. NOW, MR. CAVALIER, A WRITTEN |
| 11 | PRE-SENTENCE INVESTIGATION REPORT HAS BEEN PREPARED TO ASSIST |
| 12 | ME IN SENTENCING YOU THIS MORNING. HAVE YOU RECEIVED A COPY |
| 13 | OF THE REPORT, SIR? |
| 14 | **THE DEFENDANT:** YES, SIR. |
| 15 | **THE COURT:** HAVE YOU HAD AN OPPORTUNITY TO SPEAK TO |
| 16 | MR. BOURLAND ABOUT THE CONTENTS OF THAT REPORT? |
| 17 | **THE DEFENDANT:** YES, SIR. |
| 18 | **THE COURT:** ALL RIGHT. NOW, MR. BOURLAND HAS FILED |
| 19 | AT LEAST ONE OBJECTION ON YOUR BEHALF IN CONNECTION WITH THAT |
| 20 | REPORT. SO I AM GOING TO GIVE HIM AN OPPORTUNITY TO BE HEARD, |
| 21 | THAT IS, TO EXPLAIN TO ME WHY HE BELIEVES THAT THERE IS AN |
| 22 | ERROR IN THE REPORT AT THIS TIME. |
| 23 | MR. CAVALIER, WHY DON'T YOU HAVE A SEAT AT COUNSEL |
| 24 | TABLE AT THIS TIME. OKAY? |
| 25 | **THE DEFENDANT:** YES, SIR. |

1  **MR. BOURLAND:** THANK YOU, YOUR HONOR.

2  AND, YOUR HONOR, IT'S NOT SO MUCH THAT IT'S AN
3  ERROR, I GUESS IT'S A DIFFERENCE OF OPINION TO A CERTAIN
4  DEGREE.  I KNOW THE FACTS HAVE BEEN DRAFTED BY ARI AND HIS
5  OFFICE ARE CORRECT, IN TERMS OF THE FACTUAL SETTING.  MY
6  CONCERN IS THAT -- AND IN THE CASE I CITED AND I THINK THE
7  OTHER CASES IN THIS DISTRICT AND IN THE NATION THAT SUPPORT
8  THE PREMISE THAT THIS HONORABLE COURT HAS GREAT DISCRETION IN
9  TERMS OF HOW IT DECIDES TO GIVE OR DENY ACCEPTANCE OF
10 RESPONSIBILITY.  I REALIZE IT'S NOT SOMETHING THAT WE HAVE THE
11 RIGHT TO.  IT'S NOT SOMETHING THAT WE'RE ENTITLED TO; YET,
12 WE'VE TRIED TO CONDUCT OURSELVES IN TERMS OF THIS CASE PER SE
13 ALONG THE LINES OF PUTTING OURSELF IN A POSITION TO RECEIVE
14 ACCEPTANCE OF RESPONSIBILITY.

15 IN FACT, WHEN MR. CAVALIER WAS FIRST APPROACHED BY
16 AUTHORITIES AFTER SENDING LETTERS TO THE EAST BATON ROUGE
17 PARISH COURTHOUSE AND THIS FEDERAL COURTHOUSE, HE IMMEDIATELY
18 CONFESSED TO THE INVESTIGATING OFFICER.  NO DENIAL.  NO
19 EXCUSES.  YEAP, HE DID IT.  FROM THAT TIME FORWARD, WE DID
20 NOTHING TO DELAY, EXCEPT FOR HIS MEDICAL EXAMINATION AND
21 TREATMENT.

22 **THE COURT:** RIGHT.

23 **MR. BOURLAND:** I THINK THE COURT IS WELL AWARE, I
24 WON'T BELABOR WITH ALL OF THOSE POINTS, BUT THAT SO LONG AS HE
25 STAYS ON HIS MEDICATION, HE SEEMS TO BE ABLE TO FUNCTION, TO A

1   CERTAIN LEVEL IN LIFE.  IT'S WHEN HE GETS OFF OF THOSE
2   MEDICATIONS THAT PROBLEMS HAPPEN.  WHEN HE WAS IN AVOYELLES
3   PARISH WITH THE LETTERS, WHEN HE WAS AT ASCENSION PARISH WITH
4   THE ATTEMPT OF ESCAPE WHEN HE BROKE HIS FOOT.  IT'S A PROBLEM
5   OF THE MEDICATION.  THE MAN IS NOT A WELL MAN.  HE IS
6   CERTAINLY COMPETENT FOR THESE PROCEEDINGS.  I'M NOT TRYING TO
7   GO BACK AND REVISIT THAT, BUT HE'S NOT A WELL MAN.  I DON'T
8   SAY THAT TO EMBARRASS HIM OR IN ANY WAY CAUSE RIDICULE ON HIS
9   BEHALF, BUT HE'S NOT.  HE HAS TO DO CERTAIN THINGS TO MAINTAIN
10  A LIFESTYLE.  WE KNOW THE SUICIDE, THE SUICIDAL TENDENCIES,
11  THAT'S BEEN DOCUMENTED.  EVEN AVOYELLES PARISH DOCUMENTED --
12  AND ASCENSION PARISH -- THAT HE HAS TO BE ON THESE CERTAIN
13  PRESCRIBED DRUGS AS THE VERY LEARNED PHYSICIANS DESCRIBED IN
14  OUR COURTROOM TELECONFERENCES.
15          I WOULD ASK THE COURT TO KINDLY TAKE THAT INTO
16  CONSIDERATION BECAUSE AS TO THIS CASE AND WHAT HAPPENED HERE,
17  HE DID ACCEPT RESPONSIBILITY.  THE GOVERNMENT DOESN'T OBJECT
18  TO HIM GETTING ACCEPTANCE OF RESPONSIBILITY, AND I APPRECIATE
19  THAT FROM THEIR BEHALF.
20          I REALIZE THE THINGS THAT HE DID, IN TERMS OF AT
21  ASCENSION PARISH IS AN OFFENSE, IT'S CRIMINAL CONDUCT.  HE
22  FACES CHARGES IN ASCENSION PARISH ON THAT REGARDS STILL, AND I
23  WOULD ASK KINDLY ON THAT BEHALF TAKING INTO CONSIDERATION THE
24  MAN'S LIMITED LIFESTYLE, HIS LIMITED EMOTIONAL STABILITY, AND
25  THE FACTORS WHICH BROUGHT HIM IN THIS SITUATION TO KINDLY

1   GRANT HIM ACCEPTANCE OF RESPONSIBILITY, YOUR HONOR.
2            **THE COURT:**  THANK YOU, MR. BOURLAND.
3            MR. STEVENS, WHAT'S THE GOVERNMENT'S POSITION ON
4   THAT POINT?
5            **MR. STEVENS:**  JUDGE, I AGREE WITH MR. BOURLAND THAT
6   THE DEFENDANT TRUTHFULLY ADMITTED HIS CONDUCT AND HE --
7   PUTTING ASIDE THE DELAY IN THE PROCEEDINGS RELATED TO THE
8   COMPETENCE ISSUE, HE TIMELY ACCEPTED RESPONSIBILITY AND
9   ENTERED HIS PLEA.  NOW, THOSE ARE TWO OF THE FACTORS UNDER
10  3E1.1 --
11           **THE COURT:**  RIGHT.
12           **MR. STEVENS:**  -- THAT GO TO ACCEPTANCE.
13           I THINK WHAT MR. BOURLAND IS REFERRING TO IS AT THE
14  TIME WE SIGNED THE PLEA AGREEMENT, AT THE TIME I PROPOSED AND
15  WE WERE IN COURT FOR THE PLEA, AT THAT TIME MY POSITION, THE
16  GOVERNMENT'S POSITION, WAS THAT I ANTICIPATED THE DEFENDANT
17  WOULD QUALIFY FOR FULL ACCEPTANCE.  I DIDN'T KNOW, AND I THINK
18  MR. BOURLAND KNOWS, I DIDN'T KNOW ABOUT SOME OF THE OTHER
19  CONDUCT, THE OTHER CRIMINAL CONDUCT THAT THE PSR DISCLOSES.
20  AND THAT CONDUCT -- IF YOU LOOK AT SOME OF THE OTHER FACTORS,
21  OR AT LEAST FACTOR (B) UNDER 3E1.1, WITHDRAWAL FROM CRIMINAL
22  CONDUCT, HE DOESN'T -- THIS DEFENDANT DOESN'T MEET THAT
23  FACTOR.
24           SO I GUESS THE BEST WAY FOR ME TO ANSWER YOUR
25  QUESTION, JUDGE, IS AT THE TIME WE SIGNED THE PLEA AGREEMENT,

1   I DID ANTICIPATE HE WOULD WARRANT THE FULL THREE POINTS FOR
2   ACCEPTANCE, BUT I DIDN'T OBJECT TO THE PSR WHEN IT CAME OUT
3   WITH THE FACTS THAT IT DID.  AND I THINK THAT THERE IS A GOOD
4   BIT OF LAW THAT SUPPORTS THE PSR'S RECOMMENDATION THAT HE NOT
5   GET IT.  SO I -- YOU KNOW, THERE'S A NUMBER OF FACTORS.  I
6   THINK HE CLEARLY MEETS ONE OR TWO OF THEM.  HE CLEARLY DOESN'T
7   MET ONE OF THEM, AND I'D DEFER TO YOUR ASSESSMENT OF, YOU
8   KNOW, HOW SIGNIFICANT THAT CRIMINAL CONDUCT IN JAIL IS IN THIS
9   CASE, JUDGE.
10              THE COURT:  OKAY.
11              MR. BOURLAND:  JUDGE, MAY I STATE ONE --
12              THE COURT:  YES.
13              MR. BOURLAND:  I DIDN'T MEAN TO MISSTATE HIS
14  POSITION.  I REALIZE THAT IT WAS IN OUR PLEA AGREEMENT THAT
15  WAS -- AT THAT TIME AND I THINK IT WAS WORDED, IN FACT, IF THE
16  COURT GRANTED IT, THEY WOULD ALSO GRANT THE EXTRA POINT.
17              THE COURT:  OKAY.
18              MR. BOURLAND:  I DIDN'T MEAN TO SAY THAT HE HAD SAID
19  I DON'T CARE.  I DIDN'T MEAN IT THAT WAY.
20              THE COURT:  RIGHT.
21              MR. STEVENS:  WE'RE ON THE SAME PAGE, JUDGE.
22              THE COURT:  OKAY.  VERY GOOD.  THANK YOU, GENTLEMEN.
23              MR. BOURLAND, I CERTAINLY UNDERSTAND WHY YOU FILED
24  THE OBJECTION.  I THINK YOU WERE RIGHT IN DOING SO; HOWEVER,
25  I'VE GOT NOT ONE, BUT TWO PSYCHIATRIC REPORTS FROM -- ONE FROM

```
 1   DR. JOSEPH ZONNO, AS YOU KNOW, WHO EVALUATED HIM.  AND, IN
 2   FACT, EVEN BEFORE THAT, WE HAVE DR. JEREMIAH DWYER WHO ALSO
 3   EVALUATED THE DEFENDANT.
 4                MR. BOURLAND:  RIGHT.
 5                THE COURT:  BOTH OF THEM ESSENTIALLY REACHED THE
 6   SAME CONCLUSION.  NOW, THEY BOTH AGREE THAT THE DEFENDANT DOES
 7   NOT, OF COURSE, SUFFER FROM THE KIND OF MENTAL DEFECT OR
 8   DISEASE THAT WOULD RENDER HIM NOT CAPABLE OF UNDERSTANDING THE
 9   NATURE OF THE CHARGES FILED AGAINST HIM OR IN ASSISTING IN HIS
10   OWN DEFENSE.  BUT BEYOND THAT, THERE WERE SOME I THINK SOME
11   APPROPRIATE -- OR SOME FINDINGS, NONETHELESS, MADE THAT GUIDE
12   THE COURT'S DECISION ON THE OBJECTION.  IT WAS NOTED THAT THE
13   DEFENDANT'S OVER-ALL FUNCTIONING WAS RATHER HIGH.  THERE WAS
14   MAYBE SOME COGNITIVE LIMITATIONS, AS NOTED BY THE
15   PSYCHIATRIST.  BUT OVER-ALL HIS PSYCHIATRIC FUNCTIONING AND
16   INTELLECTUAL FUNCTIONING WAS QUITE HIGH.
17                IN FACT, I BELIEVE BOTH OF THESE PHYSICIANS OR
18   PSYCHIATRISTS, FORENSIC PSYCHIATRISTS OR PSYCHOLOGISTS,
19   CONCLUDED THAT HE MAY HAVE ALSO BEEN MALINGERING, TO SOME
20   EXTENT.  AND SO THAT IS CERTAINLY SOMETHING THAT I HAVE TO
21   CONSIDER AND CERTAINLY WILL CONSIDER HERE.
22                I MUST SAY THAT GIVEN THE NATURE OF THE DISRUPTIVE
23   CONDUCT OF THE DEFENDANT, I MEAN THE DEFENDANT'S CONDUCT
24   DIRECTLY AFFECTED THE OPERATIONS OF THIS COURTHOUSE.  HE
25   THREATENED OPERATIONS AT THE 19TH JUDICIAL DISTRICT COURT HERE
```

1   IN BATON ROUGE.  LATER, HE WAS AT LEAST ACCUSED OF THREATENING
2   TO KILL A SHERIFF'S DEPUTY.  HE THREATENED TO STAB ANOTHER
3   INMATE IN AUGUST OF 2015, AND ALL OF THIS OCCURRED AT A TIME,
4   MR. BOURLAND, WHEN THE MEDICAL PROFESSIONALS AND PSYCHIATRIC
5   PROFESSIONALS HAD READILY CONCLUDED THAT HE DOES KNOW WHAT HE
6   IS DOING, HE DOES HAVE AN UNDERSTANDING OF THAT WHICH IS GOING
7   ON AROUND HIM.  AND SO IT'S DIFFICULT FOR ME TO CONCLUDE THAT
8   HE SIMPLY DIDN'T KNOW WHAT HE WAS DOING, ESPECIALLY INVOLVING
9   THE ACTIVITIES AT THE PRISON PARISH.  THESE ARE NOT THE KIND
10  OF PSYCHOTIC SYMPTOMS OR DISORDERS THAT I THINK EXCUSE HIS
11  CONDUCT.
12          AND AS YOU WELL KNOW FROM THE LAW OF THE FIFTH
13  CIRCUIT, AS WELL AS THE GUIDELINES, IT IS APPROPRIATE FOR THE
14  COURT TO CONSIDER THAT CONDUCT WHEN DETERMINING WHETHER HE HAS
15  FULLY AND COMPLETELY ACCEPTED RESPONSIBILITY FOR HIS CRIMINAL
16  CONDUCT.
17          AND I MUST SAY THAT IN VIEW OF THIS INFORMATION AND
18  THESE EPISODES, I CANNOT CONCLUDE THAT HE HAS DONE SO.  I HAVE
19  READ HIS STATEMENT OF ACCEPTANCE THAT'S REFLECTED IN THE
20  PRE-SENTENCE INVESTIGATION REPORT, AND I ACCEPT IT FOR WHAT IT
21  IS, BUT I THINK THAT IT IS COMPLETELY INCONSISTENT, HIS
22  ACTIONS HOWEVER WERE COMPLETELY INCONSISTENT WITH HIS VERBAL
23  EXPRESSIONS OF ACCEPTANCE, AND SO FOR THAT REASON, THE
24  OBJECTION IS OVERRULED.
25          **MR. BOURLAND:**  THANK YOU, YOUR HONOR.

1     WITH RESPECT, WOULD YOU PLEASE NOTE OUR EXCEPTION TO
2  THE RULING?
3     THE COURT: I MOSTLY CERTAINLY WILL.
4     ALL RIGHT. MR. CAVALIER, WOULD YOU PLEASE RETURN TO
5  THE PODIUM?
6     NOW, IN VIEW OF THE COURT'S RULING, I FIND THAT THE
7  GUIDELINES IN THIS CASE CALL FOR THE FOLLOWING: THE
8  DEFENDANT'S TOTAL OFFENSE LEVEL IS 23. THE DEFENDANT'S
9  CRIMINAL HISTORY CATEGORY IS A SIX. THE DEFENDANT IS SUBJECT
10 TO TERM OF IMPRISONMENT OF 92 TO 115 MONTHS. HE IS SUBJECT TO
11 TERM OF SUPERVISED RELEASE OF ONE TO THREE YEARS. THE
12 DEFENDANT IS NOT ELIGIBLE FOR PROBATION. HE IS SUBJECT TO A
13 FINE IN THE SUM OF $10,000 TO $100,000. RESTITUTION IS NOT
14 APPLICABLE IN THIS CASE; HOWEVER, THE COURT IS REQUIRED TO
15 IMPOSE THE SPECIAL ASSESSMENT FEE IN THE SUM OF $200,
16 REPRESENTING $100 FOR EACH OF THE TWO FELONY COUNTS TO WHICH
17 THE DEFENDANT HAS PLED GUILTY.
18    NOW, MR. CAVALIER, DO YOU HAVE ANYTHING TO SAY,
19 ANYTHING YOU WOULD LIKE ME TO KEEP IN MIND BEFORE I IMPOSE
20 SENTENCE, SIR?
21    THE DEFENDANT: NO, SIR.
22    THE COURT: OKAY. THANK YOU.
23    MR. BOURLAND, ANYTHING ON BEHALF OF YOUR CLIENT?
24    MR. BOURLAND: THANK YOU, YOUR HONOR.
25    YOU PROBABLY SEEING IT COMING. I AM ASKING FOR

1   MERCY AND LENIENCY.  I WOULD BECAUSE OF -- I THINK IN -- JUST
2   TO DRIFT BACK FOR ONE SECOND, THAT THE LAST TIME WE HAD OUR
3   TELECONFERENCE IN COURT WITH THE VERY LEARNED PHYSICIAN FROM
4   NORTH CAROLINA IN BUCKNER, ONE OF MY LAST QUESTIONS I BELIEVE
5   I ASKED HIM WAS THAT -- AND IF I WORDED IT INCORRECTLY, PLEASE
6   CORRECT ME -- BUT THAT, SO LONG AS HE STAYS ON HIS MEDICATION,
7   HE'S OKAY?  AND THAT WAS EXACTLY HOW I ASKED IT.  BUT THE
8   RESPONSE WAS YES, BUT HE HAS TO BE ON MEDICATION, OTHERWISE HE
9   DOESN'T FUNCTION WELL.  AND I ASK THE COURT TO KINDLY TAKE
10  THAT INTO CONSIDERATION OF THE SENTENCING BECAUSE YES, I'M NOT
11  SO SURE THAT MR. CAVALIER DOESN'T KNOW RIGHT FROM WRONG.  I'M
12  NOT TRYING TO ASSERT THAT.  I THINK HE CANNOT CONTROL HIS OWN
13  IMPULSES AT TIMES UNLESS HE HAS THE BENEFITS OF MEDICATION TO
14  ASSIST HIM THROUGH LIFE.  AND I ASK THE COURT TO KINDLY TAKE
15  THAT INTO CONSIDERATION AND IN LIEU OF THE GUIDELINE RANGE TO
16  DO A DOWNWARD VARIANCE.  THANK YOU, SIR.
17           **THE COURT:**  THANK YOU, MR. BOURLAND.
18           MR. STEVENS?
19           **MR. STEVENS:**  JUDGE, I SHOULD SAY -- I DON'T KNOW IF
20  I -- I DON'T HAVE ANY CHANGES TO THE PSR.  I DON'T HAVE ANY
21  OBJECTIONS I WANT TO MAKE TODAY FOR THE FIRST TIME.  I HAVE
22  NOTHING TO SAY TO CHANGE IT.  IT'S A TROUBLING CASE, JUDGE.
23  IT'S TWO VERY SERIOUS OFFENSES.  WE KNOW THAT FROM THE OFFENSE
24  LEVEL, WE KNOW THAT FROM THE PSR.  AND THIS DEFENDANT, YOU
25  KNOW, HAS A VERY TROUBLING CRIMINAL HISTORY WITH -- I COUNTED

1  EIGHT PRIOR ADULT CONVICTIONS, INCLUDING A FEW THAT ARE
2  SIMILAR TO THE CONDUCT, THE CRIMINAL CONDUCT AT ISSUE HERE.
3  AND SO FOR ALL OF THOSE REASONS, JUDGE, I THINK A PRETTY STIFF
4  SENTENCE IS APPROPRIATE, AND I'D DEFER TO YOU AS TO WHERE IN
5  THAT RANGE IT OUGHT TO BE, BUT I THINK THAT'S PROBABLY CALLED
6  FOR IN THIS CASE, JUDGE.
7              **MR. BOURLAND:**  MAY I ADD ONE MORE THING, YOUR HONOR?
8  AND I HOPE I DON'T EMBARRASS BRIAN BY SAYING THIS, BECAUSE THE
9  VERY FIRST TIME I EVER MET WITH HIM DOWNSTAIRS IN THE
10 DETENTION AREA, I ASKED HIM, FRANKLY, WHY WOULD YOU DO THIS?
11 WHAT CAUSED YOU TO DO THIS -- THE SITUATION -- ESPECIALLY WHEN
12 YOU DIDN'T TRY TO HIDE YOU IT?  YOU HAD THE RETURN ADDRESS ON
13 THE ENVELOPES, THEY KNEW WHERE IT CAME FROM, THEY KNEW IT WAS
14 YOU.  WHY DID YOU DO IT?  HE TOLD ME, VERY FRANKLY, AND I
15 GUESS THIS MAY BE BACK ON HIS PSYCHOTIC EPISODE, A SITUATION
16 GOING ON AT THE TIME, BUT YET, I WANTED TO GET INTO THE
17 FEDERAL SYSTEM.  NOW, THAT'S NOT THE WAY TO GET INTO THE
18 FEDERAL SYSTEM NECESSARILY, BUT THAT IS THE ANSWER HE PROVIDED
19 TO ME AT THE TIME OF -- WE KNOW IT CAUSED GREAT HARM AND
20 CAUSED GREAT INCONVENIENCE AND DISTRESS ON A LOT OF PEOPLE.  I
21 DON'T THINK IT WAS DONE WITH MALICIOUSNESS, VERY MISGUIDED.
22 AGAIN, I THINK SOMETHING THAT YET HE SUFFERS FROM WITH HIS
23 LIMITED EMOTIONAL STABILITY.  THANK YOU.
24             **THE COURT:**  THANK YOU, MR. BOURLAND.
25             NOW, MR. BOURLAND, LET ME ADDRESS YOU FIRST.  ONE OF

1  THE CONCERNS THAT I'VE HAD IS THAT THIS IS NOT THE FIRST TIME
2  THAT MR. CAVALIER HAS BEEN ON MEDICATIONS.  HE'S BEEN ON
3  MEDICATIONS SINCE A VERY YOUNG AGE, AS YOU KNOW, AND HE SHOULD
4  HAVE REMAINED ON THOSE MEDICATIONS.  AND I BELIEVE THAT HE IS
5  RESPONSIBLE FOR HAVING REMAINED ON THOSE.  OF COURSE, HAD HE
6  REMAINED ON THOSE MEDICATIONS, HE PROBABLY WOULDN'T FIND
7  HIMSELF BEFORE ME TODAY.
8            DO YOU UNDERSTAND EVERYTHING THAT I'VE JUST TOLD
9  YOUR LAWYER, MR. CAVALIER?
10           **THE DEFENDANT:**  YES, SIR.
11           **THE COURT:**  NOW, MR. CAVALIER, I'M VERY MUCH AWARE
12 OF THE VERY COMPREHENSIVE PRE-SENTENCE INVESTIGATION THAT HAS
13 BEEN CONDUCTED BY MY PROBATION OFFICER THAT YOU'VE HAD A ROUGH
14 LIFE.  YOU'VE HAD A ROUGH CHILDHOOD.  YOU'VE NOT HAD AN
15 OPPORTUNITY TO GRADUATE HIGH SCHOOL OR TO EARN A GED; IS THAT
16 RIGHT?
17           **THE DEFENDANT:**  YES, SIR.
18           **THE COURT:**  AND AS A RESULT, YOU ARE NOT EVEN BEEN
19 ABLE TO HOLD A STEADY JOB FOR ANY MEANINGFUL AMOUNT OF TIME;
20 ISN'T THAT RIGHT?
21           **THE DEFENDANT:**  YES, SIR.
22           **THE COURT:**  THE REPORT REFLECTS, AND I THINK IT IS
23 ABSOLUTELY ACCURATE THAT YOU'VE BEEN INCARCERATED ON ALMOST A
24 CONTINUOUS BASIS SINCE 2001; ISN'T THAT RIGHT?
25           **THE DEFENDANT:**  YES, SIR.

1    THE COURT: ALL RIGHT. BUT, YOU KNOW, MR. CAVALIER,
2    THIS IS NOT THE WAY TO GET ATTENTION FROM THE FEDERAL
3    GOVERNMENT BY ESSENTIALLY THREATENING THE HEALTH AND SAFETY OF
4    FEDERAL EMPLOYEES AT THE COURTHOUSE, OR THE STATE COURTHOUSE.
5    I UNDERSTAND THAT AT ONE POINT YOU MADE THREATS BECAUSE
6    ALLEGEDLY YOU WERE CONCERNED THAT MAYBE THE FBI MAY HAVE HAD
7    SOME INVOLVEMENT IN THE DEATH OF A FAMILY MEMBER. THAT'S
8    SIMPLY NOT APPROPRIATE CONDUCT, MR. CAVALIER. YOU UNDERSTAND
9    THAT, DON'T YOU?
10   THE DEFENDANT: YES, SIR.
11   THE COURT: I HAVE TO TAKE THIS SERIOUS BECAUSE
12   PEOPLE COME TO THIS COURTHOUSE, THEY GO TO THE STATE
13   COURTHOUSE FOR VERY IMPORTANT REASONS. THOSE ARE FOLKS THAT
14   DESERVE JUSTICE IN THE CRIMINAL CASE OR A CIVIL CASE AND WHEN
15   PEOPLE LIKE YOU DO WHAT YOU DID IT PREVENTS PEOPLE, CITIZENS,
16   OUR FELLOW CITIZENS, FROM GETTING THAT WHICH THEY SERVE. DO
17   YOU UNDERSTAND THAT?
18   THE DEFENDANT: YES, SIR.
19   THE COURT: AND SO FOR THAT REASON, I'VE GOT TO
20   TREAT THIS VERY, VERY SERIOUSLY, MR. CAVALIER, BUT I WANT YOU
21   TO FULLY UNDERSTAND WHY I HAVE TO TREAT THIS SERIOUSLY. IT'S
22   NOT BECAUSE OF THE MERE INCONVENIENCE TO US, IT'S BECAUSE IT
23   HAS HAD A DIRECT AND IMPORTANT IMPACT ON PEOPLE WHO DESERVE
24   BETTER. DO YOU UNDERSTAND THAT, SIR?
25   THE DEFENDANT: YES, SIR.

1          **THE COURT:** NOW, MR. CAVALIER, I HAVE DECIDED, AFTER
2  REVIEWING EVERYTHING, THAT I WILL IMPOSE A GUIDELINE SENTENCE
3  IN YOUR CASE.  I WILL IMPOSE A SENTENCE THAT IS ON THE LOW END
4  OF THE GUIDELINES HOWEVER, BUT I HOPE THAT YOU CONTINUE TO
5  TAKE THIS MEDICATION, SIR.  YOU TOLD ME AT THE START OF THIS
6  HEARING THAT YOU'RE FEELING PRETTY GOOD; IS THAT RIGHT?
7          **THE DEFENDANT:** YES, SIR.
8          **THE COURT:** SO THE MEDICATION SEEMS TO BE WORKING;
9  RIGHT?
10         **THE DEFENDANT:** YES, SIR.
11         **THE COURT:** NOW, IF YOU CONTINUE TO TAKE THAT
12 MEDICATION, AND CERTAINLY THE FOLKS AT THE BUREAU OF PRISONS
13 WHERE YOU WILL BE HOUSED FOR THE NEXT SEVERAL MONTHS AND YEARS
14 ACTUALLY, THEY ARE GOING TO MAKE SURE YOU STAY ON THAT
15 MEDICATION, BUT IT'S GOING TO BE CRITICAL THAT YOU REMAIN ON
16 THAT MEDICATION, EVEN AFTER YOU'RE RELEASED.  DO YOU
17 UNDERSTAND THAT?
18         **THE DEFENDANT:** YES, SIR.
19         **THE COURT:** NOW, WHEN YOU ARE RELEASED FROM THE
20 CUSTODY OF THE BUREAU OF PRISONS, I WILL PLACE YOU ON WHAT IS
21 CALLED "SUPERVISED RELEASE" AND I EXPLAINED TO YOU WHEN I TOOK
22 YOUR PLEA WHAT THAT IS.  DO YOU RECALL THAT, SIR?
23         **THE DEFENDANT:** YES, SIR.
24         **THE COURT:** ONE OF THE CONDITIONS OF THAT SUPERVISED
25 RELEASE PERIOD IS THAT YOU CONTINUE TO TAKE THAT MEDICATION

1  BECAUSE I'M AFRAID THAT'S THE ONLY WAY YOU ARE GOING TO BE
2  ABLE TO STAY OUT OF TROUBLE.  DO YOU AGREE WITH THAT, SIR?
3           THE DEFENDANT:  YES, SIR.
4           THE COURT:  AND I HOPE YOU WANT TO STAY OUT OF
5  TROUBLE.  I MEAN, I UNDERSTAND YOU'VE BEEN INCARCERATED FOR A
6  LONG TIME, BUT THAT'S NO PLACE FOR SOMEBODY LIKE YOU, OR FOR
7  ANYBODY TO BE.  YOU UNDERSTAND THAT?
8           THE DEFENDANT:  YES, SIR.
9           THE COURT:  NOW, WHEN YOU GET OUT OF THE CUSTODY OF
10 THE BUREAU OF PRISONS, THE PROBATION OFFICERS ARE GOING TO
11 WORK WITH YOU TO TRY TO HELP YOU FIND HOUSING, THEY ARE GOING
12 TO HELP YOU TRY TO EARN YOUR GED, AND EVEN HELP YOU TRY TO
13 FIND A JOB.  ISN'T THAT MUCH BETTER THAN BEING IN A FEDERAL
14 PRISON, DON'T YOU THINK?
15          THE DEFENDANT:  YES, SIR.
16          THE COURT:  ALL RIGHT. OKAY.  AFTER HAVING
17 CONSIDERED THE UNITED STATES' SENTENCING GUIDELINES AND THE
18 SENTENCING FACTORS ENUMERATED IN 18 USC § 3553(A), IT IS THE
19 JUDGMENT OF THE COURT THAT THE DEFENDANT, BRAIN CAVALIER, IS
20 HEREBY COMMITTED TO THE CUSTODY OF THE BUREAU OF PRISONS TO BE
21 IMPRISONED FOR A TERM OF 92 MONTHS ON EACH OF COUNTS 1 AND 2,
22 TO RUN CONCURRENTLY.  IT IS ORDERED THAT THE DEFENDANT'S
23 SENTENCE RUN CONSECUTIVELY TO HIS STATE SENTENCES IN DOCKET
24 NUMBERS 06-09-0684 AND 03-10-0993 OF THE 19TH JUDICIAL
25 DISTRICT COURT IN BATON ROUGE, LOUISIANA, AND CONSECUTIVELY TO

1   ANY SENTENCE THAT MAY BE IMPOSED FOR HIS ARREST BY THE
2   ASCENSION PARISH SHERIFF'S OFFICE ON MAY 21, 2015, FOR
3   AGGRAVATED ESCAPE AND SIMPLE CRIMINAL DAMAGE TO PROPERTY LESS
4   THAN $500.
5              IT IS RECOMMENDED THAT THE DEFENDANT BE DESIGNATED
6   TO A FACILITY WHERE HE CAN RECEIVE COGNITIVE BEHAVIORAL
7   THERAPY, ANGER MANAGEMENT EDUCATION, AND MENTAL-HEALTH
8   TREATMENT, AS WELL AS TO OBTAIN HIS GED AND VOCATIONAL
9   TRAINING.
10             UPON HIS RELEASE FROM IMPRISONMENT, THE DEFENDANT
11  SHALL BE PLACED ON SUPERVISED RELEASE FOR A TERM OF THREE
12  YEARS ON EACH OF COUNTS 1 AND 2, TO RUN CONCURRENTLY.
13             WITHIN 72 HOURS OF HIS RELEASE FROM THE CUSTODY OF
14  THE BUREAU OF PRISONS, THE DEFENDANT SHALL REPORT IN PERSON TO
15  THE NEAREST PROBATION OFFICER IN THAT DISTRICT.
16             WHILE ON SUPERVISED RELEASE, THE DEFENDANT SHALL
17  COMPLY WITH THE 13 STANDARD CONDITIONS OF SUPERVISION, AS WELL
18  AS THE FOLLOWING MANDATORY OR SPECIAL CONDITIONS:  NUMBERS 14,
19  15, 16, 17, 23, 24, 25, AND 28, ADOPTED BY THIS COURT IN
20  DETAIL IN GENERAL ORDER NO. 2012:15.  IN SUMMARY, THE
21  DEFENDANT SHALL ABIDE BY ALL FEDERAL, STATE, AND LOCAL LAWS,
22  SHALL PAY ANY FINANCIAL PENALTY ORDERED, AND SHALL NOT
23  ILLEGALLY POSSESS A CONTROLLED SUBSTANCE.  THE DEFENDANT MUST
24  SUBMIT TO A DRUG URINALYSIS, AS REQUIRED BY LAW, AND MUST NOT
25  POSSESS A FIREARM OR A DESTRUCTIVE DEVICE.  THE DEFENDANT MUST

1  PARTICIPATE IN DNA TESTING, AS WELL AS ANGER MANAGEMENT
2  TREATMENT.  HE MUST ALSO PARTICIPATE IN COGNITIVE BEHAVIORAL
3  TREATMENT AND ANGER MANAGEMENT EDUCATION AND/OR TREATMENT.
4  THE DEFENDANT MUST ALSO PURSUE VOCATIONAL TRAINING, AND SHALL
5  PARTICIPATE IN AN EDUCATIONAL SERVICES PROGRAM, SUCH AS GED
6  PREPARATION, AS DIRECTED BY THE PROBATION OFFICER.
7           NOW, THE COURT FINDS THAT THE DEFENDANT DOES NOT
8  HAVE THE ABILITY TO PAY A FINE; THEREFORE, MR. CAVALIER, I
9  WILL NOT IMPOSE A FINE IN YOUR CASE.  HOWEVER, I WILL ORDER
10 THAT YOU PAY TO THE UNITED STATES THE SPECIAL ASSESSMENT OF
11 $100 FOR EACH OF THE TWO COUNTS TO WHICH YOU HAVE PLED GUILTY
12 FOR A TOTAL OF $200.  THAT PAYMENT SHALL BE DUE IMMEDIATELY.
13          I WILL ORDER THAT THE PRE-SENTENCE INVESTIGATION
14 REPORT PREPARED IN THIS CASE BE MADE A PART OF THE RECORD
15 UNDER SEAL.
16          MR. CAVALIER, YOU HAVE THE RIGHT, SIR, TO APPEAL
17 YOUR CONVICTION AND YOUR SENTENCE, SUBJECT TO THE LIMITATIONS
18 YOU AGREED TO WHEN YOU SIGNED THE PLEA AGREEMENT WITH THE
19 UNITED STATES.  SHOULD YOU WISH TO PURSUE THE APPEAL, YOU MUST
20 FILE THE NOTICE OF APPEAL WITHIN 14 DAYS OF THE ISSUANCE OF
21 THE JUDGMENT AND COMMITMENT ORDER.  YOUR FAILURE TO FILE THAT
22 NOTICE OF APPEAL WITHIN THAT PERIOD OF TIME WILL EFFECTIVELY
23 SERVE AS A COMPLETE WAIVER OF ALL OF YOUR APPEAL RIGHTS.  DO
24 YOU UNDERSTAND THAT, SIR?
25          **THE DEFENDANT:**  YES, SIR.

```
 1              THE COURT:  NOW, IF YOU ELECT TO PURSUE THE APPEAL
 2   IN YOUR CASE, SIR, AND YOU CANNOT AFFORD TO HIRE A LAWYER, A
 3   LAWYER TO ASSIST YOU IN DOING SO, I WILL CONSIDER APPOINTING A
 4   LAWYER TO ASSIST YOU.
 5              ALSO, SHOULD YOU WISH TO PURSUE THE APPEAL, IF YOU
 6   CANNOT AFFORD TO PURCHASE A COPY OF THE TRANSCRIPT OF THESE
 7   PROCEEDINGS, I WILL ORDER THAT A COPY BE PROVIDED TO YOU AT
 8   GOVERNMENT COST.  DO YOU UNDERSTAND THAT, SIR?
 9              THE DEFENDANT:  YES, SIR.
10              THE COURT:  DO YOU HAVE ANY QUESTIONS ABOUT ANYTHING
11   WE'VE COVERED HERE, SIR?
12              THE DEFENDANT:  NO, SIR.
13              THE COURT:  ALL RIGHT.  ANY MOTIONS BY THE
14   GOVERNMENT?
15              MR. STEVENS:  JUDGE, YOU MENTIONED THE PLEA
16   AGREEMENT.  I DON'T KNOW WHETHER THAT'S BEEN ACCEPTED YET BY
17   THE COURT.
18              THE COURT:  VERY WELL.  THAT'S CORRECT.  I HAVE NOT
19   YET, BUT I WILL AT THIS TIME ACCEPT THE PLEA AGREEMENT.  I
20   FIND THAT IT ACCURATELY REFLECTS THE ACTUAL OFFENSE CONDUCT
21   AND THAT BY ACCEPTING THE PLEA AGREEMENT THE ACTUAL -- THE
22   STATUTORY PURPOSE OF SENTENCING IS NOT UNDERMINED IN ANY WAY.
23              MR. STEVENS:  THANK YOU, JUDGE.
24              THE COURT:  ALL RIGHT. OKAY.  MR. CAVALIER, GOOD
25   LUCK TO YOU, SIR, AND I WISH YOU THE BEST.  AND AGAIN, YOU
```

```
 1  HAVE TO COMMIT YOURSELF, SIR, TO STAYING ON THOSE MEDICATIONS
 2  BECAUSE IF YOU DON'T, YOU'RE GOING TO APPEAR BEFORE ME OR
 3  ANOTHER JUDGE AS SOON AS YOU GET OUT.  AND YOU DON'T WANT
 4  THAT, DO YOU, MR. CAVALIER?
 5           THE DEFENDANT:  NO, SIR.
 6           THE COURT:  ALL RIGHT.  WELL, GOOD LUCK TO YOU, SIR.
 7           THE DEFENDANT:  THANK YOU.
 8           THE COURT:  NOW, MR. BOURLAND, LET ME THANK YOU FOR
 9  REPRESENTING THE DEFENDANT.  YOU WERE APPOINTED TO DO SO.  SO
10  AGAIN, I THANK YOU, NOT ONLY ON BEHALF OF YOUR CLIENT, BUT
11  ALSO ON BEHALF OF THE COURT.  OKAY?
12           MR. BOURLAND:  THANK YOU, YOUR HONOR.  APPRECIATE
13  IT.
14           THE COURT:  ALL RIGHT.  THE DEFENDANT IS REMANDED TO
15  THE CUSTODY OF THE UNITED STATES' MARSHAL.
16           MR. STEVENS:  THANK YOU, JUDGE.
17           THE COURT:  THANK YOU, GENTLEMEN.
18           (WHEREUPON, THIS MATTER WAS CONCLUDED.)
19                      C E R T I F I C A T E
20       I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT
21  FROM THE RECORD OF THE PROCEEDINGS IN THE ABOVE-ENTITLED
22  NUMBERED MATTER.
23  _Shannon Thompson_____
24  SHANNON L. THOMPSON, CCR
25  OFFICIAL COURT REPORTER
```